THE STATE, DARIUS A. COVERT AND ELLEN HIS WIFE, PROS., v. CHARLES HULICK AND OTHERS, DEFEND-ANTS.

1. Where the application was for a road to run "a northwesterly and a northerly direction," and the road as laid out contained thirty-six courses, all of them either northwesterly or northerly, excepting two, *Held*, that the variance was not material.

2. If the application describes the road by its general direction, and not by strict course and distance, it is sufficient if the road laid out, taken as a whole, answers, substantially, the description in the application.

3. The land of a married woman, subject to the provisions of the act of March 25th, 1852, having been taken for the road—*Held*, that the damages were rightly assessed to the wife alone, without naming the husband.

4. If the surveyors have assessed to the land owner an amount equal, in their judgment, to the actual damages sustained by him, their assess-ment will not be reviewed on *certiorari*—the remedy in such a case

being by application for the appointment of freeholders to review the assessment.

5. But if it clearly appears that the assessment was not the result of a fair estimate of the actual damages, but was intended as merely nominal damages, because the surveyors regarded the land owner as an applicant for the road, when they had no right to do so, such assessment is bad, and the return will, for that reason, be set aside.

On *certiorari* to Monmouth Pleas.    In matter of road.

Argued before Justices VREDENBURGH and WOODHULL.

For the prosecutors, *William H. Vredenburgh.*

For the defendants, *H. C. Clayton* and *H. S. Little.*

The opinion of the court was delivered by

WOODHULL, J.    This writ was brought to set aside the return of surveyors in a matter of public road, in the township of Ocean, in the county of Monmouth.

The first objection urged against the return was, that the route of the road, as laid out, varies materially from that described in the application.

The road applied for was to run "a northwesterly and a northerly direction," between two designated points, distant from each other about two and a half miles.    The road laid by the surveyors has thirty-six courses, all of them, with two exceptions, running either in a northwesterly or a northerly direction.    These exceptions are the first course— "south 84° west 50 links," and the eighteenth—"south 76° east 4 chains 98 links," and as they cannot be said to be either northwesterly or northerly, it is insisted on the part of the prosecutors, that the deviation from the prescribed route is material, and should be held to be fatal to the return.

But this position cannot, I think, be maintained.    As the application in this case describes the road by its general direction, and not by strict course and distance, as is some-

times imprudently done, if the surveyors have laid out a road which, taken as a whole, answers substantially the description in the application, they have, in this respect, done all that the spirit of our road act, and the decisions of our courts require of them.

In *The State* v. *Atkinson*, 3 *Dutcher* 420, the road applied for was to run a northwesterly direction, and the second course of the road, as laid, was south 84° west, and it was held that this being one of the many courses, and the general course of the road laid being northwesterly, the variance was not material.

In this case, notwithstanding the deviations complained of, it is still true that the general course of the road laid is northwesterly and northerly, and this being also the general course called for in the application, there is not, in fact, any variance between them.

It was further objected on the part of the prosecutors, that the name of Darius A. Covert, the husband, ought to have appeared in the return as an owner, or as having some interest in the land over which the road is laid; and that either some damages should have been assessed to him separately, or that the whole should have been assessed to him and his wife jointly.

It is not questioned that a tract of land containing some sixteen or eighteen acres, through which the road passes, was owned by Ellen—then Ellen Jeffrey, and a widow—at the time of her marriage with Darius A. Covert, in March, 1867, nor that it has been held by her since that time, subject to the provisions of the "act for the better securing the property of married women," approved March 25th, 1852.

The surveyors being required to assess the damages which the *owner* of any land taken for the road will sustain thereby (*Act of March 1st*, 1850, *Nix. Dig.* 833,*) the question to be determined is, simply whether the husband, under the circumstances stated, was in the sense of the act, an owner of the land in question. That the wife owned it at the time of her marriage with Covert is admitted, and that she was then

---

* *Rev., p. 999.*

the sole owner. By the express terms of the act (section 1) what she then owned was to "*continue* her sole and separate property, as if she were single." This is equivalent to saying that the wife should continue to be the sole owner after the marriage in the same sense, and as fully as she was before it. The language of the act seems carefully to exclude the possibility of any change in the ownership of such property by the mere force of the marriage contract, and during the continuance of the marriage relation. In the case of *Porch* v. *Fries*, recently decided in the Court of Chancery of this state, it was held that in cases coming within the provisions of this act, the husband has no estate or interest in his wife's land during her life, and that the effect of the act was to destroy the estate of the tenancy by the curtesy initiate. 3 *C. E. Green* 204. See also cases cited by the Chancellor in that case.

The surveyors were right, therefore, in not naming the husband as owner, and in not assessing damages either to him separately, or to him and his wife jointly.

The next objection to the return was, that the surveyors assessed only nominal damages to Mrs. Covert, on the ground that she was an applicant for the road, when in fact she was not an applicant. It appears, from the affidavits submitted to us, that Mrs. Covert was sometimes called by the name of Jeffrey, her first husband, even after her second marriage. The name of Ellen Jeffrey is among those signed to the notice of the application for the road, but whether signed by her authority or not, does not clearly appear. Much of the testimony in the case bears upon this point, and is very conflicting.

The return itself, however, and the acts of the surveyors, furnish very material if not conclusive evidence upon the same point. The surveyors return that they have assessed " the damages to the respective owners of the land taken for the laying out of the said road (said owners *not* being applicants therefor)" and then assess to Ellen Covert, among other owners, the sum of one dollar for her damages. But

if she was, in fact, an applicant they could not legally make any assessment at all in her favor. *Act of* 1850,* § 6, *Nix. Dig.* 834.

The evidence produced on the part of the defendants to prove that Mrs. Covert was an applicant, and therefore not entitled to any damages, is not, in my judgment, sufficient to overcome the positive testimony of Mrs. Covert, and the official declarations and acts of the surveyors to the contrary.

Assuming then that Mrs. Covert was not an applicant, it follows that the surveyors were bound to make an assessment of the damages which she, as owner of the land in question, would sustain by the laying out of the road. If the sum of one dollar, which they have certified as the amount assessed to her, fairly represented in their judgment the damages which would be actually sustained by her (and this must be presumed until the contrary appears,) then their assessment was legal and proper, and will not be reviewed by this court on *certiorari*. *State* v. *Miller,* 3 *Zab.* 383.

The proper remedy for the land owner in such a case, is to apply for the appointment of freeholders to review the assessment made by the surveyors. *Nix. Dig.* 834,† §§ 63–836, § 80.

But it is urged on the part of the prosecutors, that the assessment to Ellen Covert in this case was not the result of a fair estimate of her actual damages, but was put down to her as a matter of form, or as merely nominal damages, because they regarded her as an applicant, and for that reason not entitled to actual damages; and this objection appears to me to be fully sustained by the testimony.

Mr. Gugel, one of the surveyors, says: "In assessing damages to Mrs Covert in this case, if we had thought she was not an applicant, we should have been governed by the value of the fencing required to be made, and the value of the land taken." The value of the fencing required in the case of Mrs. Covert was proved to be over two hundred dol-

*Rev., p.* 1000, § 18.　　　　　　†*Rev., p.* 999, § 17.

lars. This sum, together with the value of the land taken, would have been the amount to be assessed to her according to the rule applied by the surveyor to other owners who were not applicants. Having named her in their return, among the land owners who were not applicants, and having determined to assess damages to her as such, they were clearly bound to make a fair estimate of the actual damages which, according to the best of their judgment, she would sustain by the laying out of this road. Failing to do this, the surveyors have failed to make such an assessment as the law required them to make, and the return must, for this reason, be set aside.

Return set aside.

CITED *in State, Swanton, pros., v. Pierson,* 8 *Vr.* 364.